## In re TAYLOR.

(District Court, S. D. Ohio, E. D. March 25, 1926.)

No. 4723.

1. **Mortgages** 151(1)—**As respects priorities, mortgage given before commencement of improvement, authorizing mortgagee to pay out proceeds for improvement, held construction mortgage, governed by statute (Gen. Code Ohio, § 8321—1).**

As respects priorities, mortgage reciting that it was given to improve premises and covenanting that proceeds would be paid out by mortgagee as provided in Gen. Code Ohio, § 8321—1, though given before actual commencement of improvement, held construction mortgage governed by such statute.

2. **Mortgages** 163(2, 3)—**Construction mortgage held prior to subsequently recorded purchase mortgage and mechanics' liens to extent proceeds were applied to improvement (Gen. Code Ohio, §§ 8310, 8311, 8321—1).**

Lien of construction mortgage, executed before commencement of improvement, containing covenant for application of proceeds under Gen. Code Ohio, § 8321—1, held prior to subsequently recorded purchase-money mortgage and mechanics' liens to extent proceeds were actually applied toward improvement and not as respects payments to mortgagor, in view of sections 8310, 8311.

3. **Mortgages** 171(1)—**Interested innocent third persons may rely on record of construction mortgage containing covenants for application of proceeds (Gen. Code Ohio, § 8321—1).**

Recording of construction mortgage containing covenants for application of proceeds under Gen. Code Ohio, § 8321—1, is notice to interested innocent third persons on which they have right to rely.

4. **Mortgages** 171(1)—**Statute giving mortgages lien from filing date, though still effective, yields to subsequent act providing different rule under particular circumstances (Gen. Code Ohio, §§ 8321—1, 8542).**

Gen. Code Ohio, § 8542, giving mortgages lien from date of filing, still obtains but must yield to section 8321—1, subsequently enacted, providing different rule for construction mortgages in particular circumstances.

In Bankruptcy. In the matter of Emerson L. Taylor, bankrupt. On review of proceedings and decision of referee in bankruptcy respecting priority of mortgage and mechanics' liens. Order in accordance with opinion.

John E. Sater, of Columbus, Ohio, for Columbia Bldg. & Loan Co.

Geo. E. Landis, of Columbus, Ohio, for trustee.

E. D. Howard, of Columbus, Ohio, for Boulevard Lumber & Supply Co.

Jos. M. Howard and N. J. Weisend, both of Columbus, Ohio, for Urlin.

HOUGH, District Judge. This is a review of the proceedings and decision of the referee in bankruptcy, and concerns the priority of liens, to wit: Two mortgages and a mechanic's lien.

Taylor was adjudged bankrupt on the 2d day of September, 1924. Prior to that time, and in the month of April, 1923, he purchased two vacant lots, known as lots Nos. 213 and 214 of Wagenhals and others subdivision, in the village of Grand View Heights, Franklin county, Ohio, for the sum of $4,000—$820 of which was paid in cash and purchase-money mortgage given for the balance of $3,180.

Representing that he desired to improve the properties by the erection of houses thereon, and that he further desired to place construction mortgages on the property to raise funds for that purpose, it was agreed that Urlin's purchase-money mortgage should be withheld from the record until after the construction mortgages were recorded.

In accordance with that agreement, this was done, and Taylor mortgaged lot No. 213 for $5,000, and lot No. 214 for $6,000 to the Columbian Building & Loan Company, which mortgages were filed for record on the 23d day of April, 1923.

These mortgages contained the following covenant:

"Said note secured by this mortgage is given to improve the premises herein described, and the mortgagors hereby covenant and agree with the mortgagee that the funds secured by this mortgage may be paid out by

the mortgagee as provided by section 8321—1 of the General Code of Ohio."

Urlin's mortgage was filed for record on the 26th day of April, 1923. Upon the execution and filing of the building and loan mortgages, the loan company set aside, in an account designated "Amounts Due Borrowers on Unfinished Buildings," to the credit of Emerson L. Taylor, the bankrupt, the sum of $5,000 and $6,000, respectively, corresponding to the considerations in its mortgages.

At the time of the execution and delivery of its mortgages, the loan company advanced and delivered to Taylor its check for $700 on each of said loans, and on the 30th of April, 1923, again advanced $500 on each of said loans, taking receipts for said amounts, signed, "Campbell & Casto, per E. L. T." And again, on the 23d day of May, 1923, advanced on each of said loans the sum of $750, taking in exchange therefor receipts signed, "Campbell & Casto, per E. L. T."

No further withdrawals occurred until the 30th of April, 1924, when the loan company paid to Campbell & Casto the general contractors, upon the order of Taylor, the sum of $750. This amount was in payment, or part payment, of the excavation cost, and is the only amount advanced by the loan company under its mortgages, that went into the improvement of the property or the construction of buildings thereon.

The building and loan company's construction mortgages and Urlin's purchase-money mortgage were both filed prior to the time construction had actually begun. Subsequent to the filing of these mortgages, and after construction had actually begun, the Boulevard Lumber & Supply Company furnished lumber which went into the improvement, which company afterward perfected a mechanic's lien therefor in the amount of the value of the lumber so furnished, to wit, $1,325.13.

After the adjudication in bankruptcy, the trustee sold the property, free of liens, and the proceeds of the sale are now in the hands of the trustee pending final order of distribution. A hearing was had before the referee upon an agreed statement of facts, briefs, and arguments of counsel, and the referee found that the loan company's mortgages to the extent of the total of the various amounts advanced, to wit, $4,650, with interest, was the first and prior lien against the fund, that the Urlin mortgage for $3,180 and interest was the next prior lien, and that the Boulevard Lumber & Supply Company's lien for $1,325.13 and interest was junior to the former.

Counsel representing the junior liens concede that the $750 paid for excavation that actually went into the improvement is a first lien over other claims, and claim that the remainder of the $4,650 advanced by the loan company was improperly appropriated and paid out by the loan company, and therefore becomes junior to their liens. The mechanic's lienor concedes further that his lien is junior to the Urlin purchase-money mortgage lien.

[1] In order to determine the equitable order of the liens of the contestants, the first question that presents itself is, What is the proper construction, and legal effect of the loan company's mortgages, in view of the above-quoted covenant therein contained? Counsel claim that this covenant is mere surplusage, and was introduced into the documents through error and mistake, and that a proper construction of the mortgages would eliminate from consideration this particular covenant and justify the conclusion that the instruments are no more than general mortgages.

If this deduction be sound, it disposes of the priority question in favor of the loan company under favor of section 8542, General Code of Ohio. It is urged that such a construction is warranted on the authority of the decision of the Supreme Court of Ohio, in the case of Rider v. Crobaugh et al., 100 Ohio St. 88, 125 N. E. 130, in that that decision holds that the provisions of section 8321—1, General Code of Ohio, do not apply to a construction mortgage, unless that mortgage be given subsequent to the actual commencement of the improvement for which given.

This court is unable to interpret that decision to the extent claimed for it by counsel for the loan company. It must be remembered that the Supreme Court had before it in that case a mortgage purporting to be a construction mortgage, but not containing the covenants provided in section 8321—1, General Code, and the latter element is wherein the difference occurs in the question passed upon by the Supreme Court and the question presented to this court. The law of that case is found in the syllabi, and anything in the opinion inconsistent or differing from the law as announced must be construed to be obiter dicta, or the individual view of the author of the opinion. The law announced by the Supreme Court in this case upon this particular question, is found in syllabus 1 and syllabus 4, as follows:

"1. The lien of a mortgage, although given for the avowed purpose of improving real estate, and not containing the covenants provided in section 8321—1, General Code, * * * is prior to mechanics' and materialmen's liens, if such mortgage was filed for

record before work was begun or material furnished on the improvement."

"4. If it is reasonably apparent to the mortgagee that the construction, excavation, or improvement had not actually and obviously commenced when the mortgage was filed for record, then such mortgage would retain priority."

It would seem that the mortgage mentioned in the latter paragraph would be defined to mean a mortgage of the kind and character the court had before it in the case.

A careful examination of the provisions of section 8321—1, General Code, fails in terms to limit its provisions to construction mortgages executed or filed after the improvement work is begun.

Inasmuch as the Supreme Court has not affirmatively so held, and inasmuch as no valid reason is apparent disclosing the illegality of such covenant, the contracting parties must be held to the terms of their solemn contract in so far as it affects the rights of third persons.

[2] The parties to the mortgage contracts, having brought their agreement under the provisions of section 8321—1, General Code, the next question for consideration is an inquiry into the requirements of that section, under and in view of the facts in this case. Said section provides, in part as follows:

"Except as hereinafter provided in this section, the lien of a mortgage given in whole or in part to improve real estate, or to pay off prior incumbrances thereon, or both, *the proceeds of which are actually used in such improvement,* in the manner contemplated in sections 8310 and 8311 of the General Code, or to pay off prior incumbrances or both, and which mortgage contains therein the correct name and address of said mortgagee, together with a covenant between the mortgagor and mortgagee authorizing and empowering the mortgagee to do all things in this act provided by said mortgagee to be done, shall be prior to all mechanic's, materialmen's, and similar liens, and all liens provided for in this chapter that are filed for record after said improvement mortgage is filed for record, *to the extent that the proceeds thereof are used and applied for the purposes aforesaid,* * * * and such mortgage shall be a lien on the premises therein described from the time it is filed for record *for the full amount that is ultimately and actually paid out under said mortgage,* regardless of the time when the money secured thereby is advanced."

It is then provided that the mortgagee shall have fifteen days after the filing of the mortgage to decide whether to go forward

16 F.(2d)—20

under it, and should it be decided to complete said loan, it is provided that the funds shall be distributed as follows:

(1) To the payment of prior incumbrances.

(2) To retain sufficient funds to complete the improvement.

(3) To pay out on the owner's order such sums as the owner may certify to meet labor pay rolls on the improvement.

(4) To pay on the order of the owner the accounts of materialmen and laborers of which written notice thereof has been given the mortgagee, or under certain conditions to pay such claims pro rata.

(5) Should the owner refuse to issue an order to pay, the mortgagee should retain the whole amount claimed until the proper amount has been judicially determined.

(6) To pay out directly upon the owner's order to materialmen and laborers who have performed labor or furnished material on the improvement.

(7) To pay the balance, if any, after the improvement is completed to whomsoever the owner may direct.

It is then provided that, if the mortgagee pays out said fund otherwise than heretofore provided, the mortgagee loses the priority of his lien to that extent, and if payments are made according to the above formula, the lien is preserved; nor is the mortgagee responsible for a mistake on the part of the owner in determining priority, or for any failure of the payee to properly distribute the funds paid on the written order of the owner.

The precedence of the lien depends upon the condition that "the proceeds * * * are actually used in the improvement," as contemplated in sections 8310 and 8311, which are the sections that provide for mechanic's and materialmen's liens, and "to the extent that the proceeds thereof are used and applied for" such purpose.

The following language in the same paragraph: "The full amount that is ultimately and actually paid out under said mortgage," etc.—in its construction, must be limited to the two former quotations; that is, to the proceeds which are actually used in the improvement, and to the extent that the proceeds thereof are used.

The loan company paid out the various sums to the owner, and not to the owner's contractor or subcontractor, except in one instance, where the payment of $750 was made to the contractor for the excavation on the order of the owner. Exhibit E. Save for this amount, the loan company has paid out the remaining amounts irregularly, and not in

compliance with the covenants expressed in its mortgages.

[3] The recordation of its mortgage, containing the covenant that the mortgage contract contemplated an administration of the funds under the provisions of section 8321—1, was notice to interested innocent third persons, and upon which they had a right to rely.

[4] While section 8542, General Code, giving mortgages a lien from the date of filing, still obtains and is effective, yet it must yield to a later act of the Legislature, providing a different rule under particular circumstances. Rider v. Crobaugh et al., 100 Ohio St. 88, 125 N. E. 130. When contracting parties by the terms of their own agreement have brought themselves within the terms and under the conditions of the later legislative rule, they must abide thereby.

The priority of liens against the fund in the hands of the trustee in bankruptcy, under the view of the court, is therefore as follows:

(1) To the Columbian Building & Loan Company, for the sum of $750 and interest; this being the amount of its funds which went into the improvement.

(2) To Urlin on his purchase-money mortgage, the amount thereof, with interest.

(3) To the Boulevard Lumber & Supply Company the amount of its mechanic's lien for material, with interest.

The appropriate order may be submitted in accordance herewith.